UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| MONTERION D'ALLEN WINFREY,<br><br>Plaintiff,<br><br>vs.<br><br>JAKE ROHWER, Housing Sergent [sic] at Jameson Prison Annex SDSP, individual and official capacities; JOSI SCHMIDT, Leutenant [sic] – Officer in Command at Jameson Prison Annex SDSP, individual and official capacities; TABITHA BENTING, Warden at Jameson Prison SDSP, individual and official capacities; and TYRAN WOLLMAN Housing SGT at Jameson Prison Annex, individual and official capacities,<br><br>Defendants. | 4:25-CV-04203-CCT<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS AND § 1915A SCREENING** |

Plaintiff, Monterion D'Allen Winfrey, filed a pro se civil rights lawsuit under 42 U.S.C. § 1983 while he was incarcerated at the South Dakota State Penitentiary. Docket 1. Winfrey filed a motion for leave to proceed in forma pauperis and provided the Court with a copy of his prisoner trust account report. Dockets 2, 3.

## I.    Motion for Leave to Proceed In Forma Pauperis

At the time Winfrey filed his complaint and motion to proceed in forma pauperis, he was an inmate at the South Dakota State Penitentiary, Jameson

Annex. Dockets 1, 2. But before the Court ruled on Winfrey's motion for leave to proceed in forma pauperis, he was released from custody.[1]

Under the Prison Litigation Reform Act (PLRA), a prisoner who "brings a civil action or files an appeal in forma pauperis . . . shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). But circuit courts are split on whether the PLRA continues to apply after the prisoner is released during litigation. *See Carson v. Tulsa Police Dep't*, 266 F. App'x 763, 766–67 (10th Cir. 2008) (describing split in authority); *see also Domino v. Garland*, No. 20-CV-2583, 2021 WL 1221188, at *1 (D. Minn. Apr. 1, 2021).

The United States Courts of Appeals for the Second, Fourth, and Sixth Circuits have held that, under the PLRA, "a prisoner is obligated to pay assessed fees and costs only while he or she remains incarcerated[,]" and "[a]fter release, the obligation to pay the remainder of the fees is to be determined solely on the question of whether the released individual qualifies for pauper status." *In re Prison Litig. Reform Act*, 105 F.3d 1131, 1139 (6th Cir. 1997); *see also McGann v. Comm'r, Soc. Sec. Admin.*, 96 F.3d 28, 29–30 (2d Cir. 1996); *DeBlasio v. Gilmore*, 315 F.3d 396, 397 (4th Cir. 2003). By contrast, the Fifth, Seventh, and D.C. Circuits hold, based on the plain language of § 1915(b)(1), that a complainant must pay the full amount of the filing fee if the complainant was a prisoner when the action was commenced. *See Gay v. Tex.*

---

[1] Winfrey provided the Court with a notice of change of address providing that he is no longer incarcerated. *See* Docket 7. *See also Adult Corrections Offender Locator*, S.D. Dep't of Corrs., https://docadultlookup.sd.gov/adult/lookup/details/?id=mMsj9rB9RV0= (last visited June 16, 2026).

2

*Dep't of Corr. State Jail Div.*, 117 F.3d 240, 241–42 (5th Cir. 1997); *Robbins v. Switzer*, 104 F.3d 895, 897–99 (7th Cir. 1997); *In re Smith*, 114 F.3d 1247, 1251 (D.C. Cir. 1997).

The Eighth Circuit has not expressly weighed in on this issue but the court's holding in *Tyler* is instructive. *See In re Tyler*, 110 F.3d 528, 529–30 (8th Cir. 1997). There, the Eighth Circuit denied the plaintiff's motion to proceed in forma pauperis and refused to address the merits of the plaintiff's mandamus petition until the requisite financial obligations were met. *Id.* at 529–30. The Eighth Circuit explained that because the plaintiff had previously filed three actions dismissed as frivolous or for failure to state a claim, he was no longer eligible for a § 1915(b) installment plan. *Id.* at 529; *see also* 28 U.S.C. § 1915(g) (stating that a prisoner is not eligible for a reduced filing fee or an installment payment plan "if the prisoner has, on 3 or more prior occasions . . . brought an action . . . that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim"). As such, the Eighth Circuit ordered the plaintiff to pay the filing fee in full, noting that "[e]ven if [plaintiff]'s petition is dismissed, [plaintiff] will still be assessed the full filing fee because the PLRA makes prisoners responsible for their filing fees the moment the prisoner brings a civil action or files an appeal." *Tyler*, 110 F.3d at 529–30.

Based on this language, courts within the Eighth Circuit have held that if a prisoner filed the action while in custody, he remains liable for the filing fee even if he is later released from custody. *See Domino*, 2021 WL 1221188, at *1 n.3 (stating that the "holding in *Tyler* that the fee obligation imposed by

3

§ 1915(b)(1) is triggered at the time the action is filed . . . is consistent with the conclusion that a complainant who filed an action when he was a prisoner remains liable for the filing fee if he is subsequently released from custody"); *Counts v. Missouri*, No. 4:24-CV-01437-MTS, 2025 WL 812276, at *3 (E.D. Mo. Mar. 13, 2025) (stating that, in light of the Eighth Circuit's decision in *Tyler*, the § 1983 plaintiff was "responsible for the entire [filing] fee because the full fee was assessed against him prior to his release from custody"); *McFee v. Minnesota*, No. 11–3614, 2012 WL 514708, at *3 nn.5–6 (D. Minn. Jan. 24, 2012) (recognizing that the plaintiff must pay the filing fee, despite having been released from custody before the court ruled on the motion for IFP), *report and recommendation adopted by* 2012 WL 512611 (D. Minn. Feb. 15, 2012); *Williams v. Doe #1*, No. 4:06CV1344, 2006 WL 3804027, at *1 n.1 (E.D. Mo. Nov. 7, 2006) (noting "§ 1915(b)(1) continue[d] to apply" despite litigant's release). *But see Clark v. Wood*, No. 4:20-CV-1215-JAR, 2021 WL 1873561, at *1 (E.D. Mo. May 10, 2021) (stating that if a plaintiff was released from custody before the court ruled on the IFP motion, the court will consider the motion under the non-prisoner standard in 28 U.S.C. § 1915(a)(1)).

The Eighth Circuit's holding in *Tyler* points to requiring Winfrey to pay the full filing fee. After all, Winfrey was an inmate when he filed this action, though he has been released from custody subsequently. *See* 28 U.S.C. § 1915(b)(1). This application of the PLRA is consistent with other cases in the District of South Dakota. *See Hilston v. Lincoln Cnty. Cir. Judges*, 782 F. Supp.

4

3d 712, 715–717 (D.S.D. 2025); *Bell v. Bittinger*, No. 4:24-CV-04152-LLP, 2025 WL 1424903, at *1–2 (D.S.D. May 16, 2025).

Under the PLRA, however, the Court may accept partial payment of the initial filing fee where appropriate. Thus, "[w]hen an inmate seeks pauper status, the only issue is whether the inmate pays the entire fee at the initiation of the proceedings or over a period of time under an installment plan." *Henderson v. Norris*, 129 F.3d 481, 483 (8th Cir. 1997) (alteration in original) (quoting *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997)). The initial partial filing fee that accompanies an installment plan is calculated according to 28 U.S.C. § 1915(b)(1), which requires a payment of 20 percent of the greater of

> (A) the average monthly deposits to the prisoner's account; or
> (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

Winfrey's certified prisoner trust account report shows an average monthly deposit of $0.00 and an average monthly balance of $0.00. Docket 3 at 1. Because Winfrey would owe more than his current balance as his initial partial filing fee, the Court grants Winfrey leave to proceed in forma pauperis, Docket 2, and waives his initial partial filing fee. *See* 28 U.S.C. § 1915(b)(4) ("In no event shall a prisoner be prohibited from bringing a civil action . . . for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.").

In order to pay his filing fee, Winfrey must "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account."

5

28 U.S.C. § 1915(b)(2). The statute places the burden on the prisoner's

institution to collect the additional monthly payments and forward them to the

court as follows:

> After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

*Id.* The installments will be collected pursuant to this procedure. The Clerk of

Court will send a copy of this order to the institution that previously housed

Winfrey. Winfrey remains responsible for the entire $350 filing fee. *See Tyler,*

110 F.3d at 529–30.[2]

## II.    1915A Screening[3]

### A.    Procedural Background

After he filed his original complaint, Docket 1, Winfrey filed "Supporting

Documentation" setting out "[Department of Corrections] Policy, Dates, Names

of the Officer who handed [his] grievances IRR, Administrative Remedies, and

kites to turn into Unit Staffs mail Box and The Warden of the Institution."

---

[2] "As a practical matter, because [Winfrey] is no longer a prisoner as defined in 28 U.S.C. § 1915(h), the fee payment provisions of § 1915(b)(2) cannot be implemented at this time. Should [Winfrey] be a prisoner in the future, § 1915(b)(2) might then become applicable." *Domino,* 2021 WL 1221188, at *2 n.4; *see also McFee,* 2012 WL 514708, at *3 n.6 (stating that because the plaintiff was released, the fee payment provisions under § 1915(b)(2) cannot be utilized, but noting that if the plaintiff ever returns to custody by violating his terms of release or committing a new crime, § 1915(b)(2) will then become applicable).

[3] Because Winfrey filed this action while incarcerated, the Court conducts this screening pursuant to § 1915A. *See Domino,* 2021 WL 1221188, at *1. But even if Winfrey's petition was not subject to a § 1915A screening, the Court's analysis would be the same under 28 U.S.C. § 1915(e). *See id.* at *1 n.2.

Docket 5 at 5. This supporting documentation is presumably intended to provide more detail regarding the events surrounding Winfrey's original complaint. *See generally id.*

But the supporting documentation also details events occurring after the filing of Winfrey's original complaint and includes additional causes of action.[4] *Id.* at 1, 5. To the extent Winfrey intended this "supporting documentation" to constitute an amended complaint or supplemental pleading, this Court declines to construe it as such. *See Jeude v. Ste. Genevieve Mem'l Hosp.*, No. 1:22-CV-151 SNLJ, 2023 WL 2016942, at *1 (E.D. Mo. Feb. 15, 2023) ("The Court does not accept amendments to the complaint through supplements, declarations, notices, or other piecemeal amendments[,]" and a "plaintiff may not amend a complaint by filing separate documents."). Winfrey did not move to file an amended[5] or supplemental pleading, nor did he comply with this Court's local rules for filing amended or supplemental pleadings when filing his supporting documentation. *See* Docket 5; D.S.D. Civ. LR 15.1. "While pro se pleadings are liberally construed, pro se plaintiffs must still follow the court's local rules." *Johnson v. Kaemingk*, 381 F. Supp. 3d 1104, 1113 (D.S.D. 2019).

---

[4] In his supporting documentation, Winfrey appears to allege a First Amendment access-to-the-courts claim and an Eighth Amendment retaliation claim, both of which did not appear in his original complaint. *Compare* Docket 1 at 4–6, *with* Docket 5 at 1, 5.

[5] Winfrey has not previously amended his complaint, and his original complaint has neither been screened nor served. Therefore, at the time he filed his supporting documentation, Winfrey need not have moved for leave to file an amended complaint. Fed. R. Civ. P. 15(a)(1)(A). Nonetheless, Winfrey still failed to comply with this Court's local rules if he intended to file an amended complaint. *See* D.S.D. Civ. LR 15.1.

*See also Occhino v. Geo. Sherman & Assoc.*, No. 19-CV-2546 (ECT/LIB), 2019 WL 6918394, at *1 n.2 (D. Minn. Nov. 15, 2019), *report and recommendation adopted in relevant part by* 2019 WL 6910152 (D. Minn. Dec. 19, 2019).[6]

In considering whether Winfrey has stated a claim upon which relief may be granted, the court may look to "documents necessarily embraced by the complaint." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (citing *Enervations. Inc. v. Minn. Min. & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004)). But because this Court declines to construe Winfrey's supporting documentation as an amended or supplemental complaint, it will not consider the additional causes of action alleged in Winfrey's supporting documentation, Docket 5.

## B.    Factual Background Alleged by Winfrey

Winfrey brings three different claims arising out of events occurring while he was incarcerated at the Jameson Annex in Sioux Falls, South Dakota. Docket 1 at 1, 2.

In Count I of his complaint, Winfrey brings a claim for cruel and unusual punishment against Lieutenant Josi Schmidt. *Id.* at 4. Winfrey asserts that

---

[6] Further, this Court is hesitant to construe Winfrey's supporting documentation as either an amended complaint or supplemental complaint because it is not clear which, if either, he intended to file. "Unlike an amended pleading, which adds matters overlooked or unknown to a party when filing, '[a] supplemental pleading [ ] is designed to cover matters subsequently occurring but pertaining to the original cause.'" *Mgmt. Registry, Inc. v. A.W. Cos., Inc.*, No. 17-CV-5009, 2024 WL 1956176, at *2 (D. Minn. Mar. 20, 2024) (quoting *United States v. Vorachek*, 563 F.2d 884, 886 (8th Cir. 1977)), *report and recommendation adopted by* 2024 WL 1881329 (D. Minn. Apr. 30, 2024). Here, Winfrey's supporting documentation details events occurring both before and after the filing of his original complaint. *See* Docket 5 at 1–3.

while Schmidt was "the commanding officer in charge[,]" another officer took Winfrey to the ground and put a knee on the back of Winfrey's neck. *Id.* Schmidt filmed this encounter and "did not correct officers when a knee was put on [Winfrey's] neck." *Id.* According to Winfrey, "[a]nother inmate standing at his cell door took notice[] and helped [Winfrey] by yelling that it was illegal to do that." *Id.* After the situation had "calmed[,]" Winfrey spoke with Schmidt and the "SGT Officer in command about Both the knees on [his] neck the back of it[,]" who informed Winfrey that they would "take care of it." *Id.* But Winfrey states that no grievance forms were dropped off at his cell. *Id.* Winfrey states that he "couldnt [sic] stand to walk [and] had to be carried to [his] cell" and that his "neck is constantly sore as if [he] slept wrong on it[.]" *Id.*

In Count II of his complaint, Winfrey alleges that he has been "[d]eprived of life, liberty, or property" because he has not been provided a tablet. *Id.* at 5. Winfrey contends that he is "suppose[d] to be given a tablet right away" if he does not have a television in his cell.[7] *Id.* Winfrey alleges that the "housing sergent [sic] refused to give [him] a tablet because of a comment [Winfrey] made" toward the housing sergeant, and that Sergeant Wollman "backed [the housing sergeant] up in [Winfrey's] grievance and only responded to one concern [Winfrey] expressed and a Kite was submitted requesting an appeal form and one never came." *Id.* Winfrey also states in Count II that he has not

---

[7] Winfrey states that he is in the "ad seg" program, which this Court understands to be the administrative segregation program. Docket 1 at 5.

been able to contact his family for almost twelve months, which has negatively affected his mental health. *Id.*

In Count III of his complaint, Winfrey alleges a violation of his right to due process due to his kites and grievances having gone "unanswered[.]" *Id.* at 6. Winfrey states that because he is in administrative segregation, he "cant [sic] just walk to unit staff's office to express [his] concerns." *Id.* But Winfrey states that Sergeant Fisher[8] brought one of Winfrey's kites to the "wardens [sic] box[.]" *Id.* Winfrey provides that he was "expressing [his] situations more than one about Housing Sergents [sic] on A floor when [Winfrey is] housed and nothing got done. [Winfrey's] dispositions say one thing and there [sic] system says another." *Id.* Additionally, Winfrey states that he had been in "24 hour lockdown for aprox. 180 days," and that he feels his mental health "deteriorating" as a result. *Id.*

In his request for relief, Winfrey requests "$30,000 on all 4 Defendants individual capacity and $350,000 from DOC on official capacity." *Id.* at 7. Winfrey sues all defendants in their individual and official capacities. *Id.* at 2.

## C.    Legal Standard

A court must assume as true all facts well pleaded in the complaint when screening under 28 U.S.C. § 1915A. *Est. of Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Civil rights and pro se complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Bediako v. Stein Mart,*

---

[8] Sergeant Fisher is not named as a defendant in Winfrey's complaint. *See* Docket 1 at 1–2.

10

*Inc.*, 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); *see also Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam). Civil rights complaints cannot be merely conclusory. *Davis v. Hall*, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam) (citation omitted); *Parker v. Porter*, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). If it does not contain these bare essentials, dismissal is appropriate. *Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985). *Twombly* requires that a complaint's factual allegations must be "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]" *Twombly*, 550 U.S. at 555 (citations omitted); *see also Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting complaint must contain either direct or inferential allegations regarding all material elements necessary to sustain recovery under some viable legal theory (citation omitted)). Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28

11

U.S.C. § 1915A(b). This Court will now assess Winfrey's claims under 28 U.S.C. § 1915A.

### D.    Legal Analysis

#### 1.    Official Capacity Claims for Monetary Relief

Winfrey sues all defendants in their official capacities and requests monetary relief. Docket 1 at 2, 7. As employees at the Jameson Annex, all defendants (Rohwer, Schmidt, Benting, and Wollman) are employees of the State of South Dakota. *Id.* at 2. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). Thus, Winfrey's official capacity claims against the defendants are construed as claims against the State of South Dakota. *Id.* While "[§] 1983 provides a federal forum to remedy many deprivations of civil liberties, . . . it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Id.* at 66.

The Eleventh Amendment generally acts as a bar to suits against a state for money damages unless the state has waived its sovereign immunity. *Id.* The State of South Dakota has not waived its sovereign immunity. Thus, Winfrey's claims against Rohwer, Schmidt, Benting, and Wollman in their official capacities for money damages are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(b)(iii) and 1915A(b)(2).

### 2.    Individual Capacity Claims for Monetary Relief

Winfrey also sues the defendants in their individual capacities for monetary relief. Docket 1 at 2, 7. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

> Thus, each Government official . . . is only liable for his or her own misconduct. As we have held, a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.

*Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (cleaned up). Winfrey's individual capacity claims must allege that each individual defendant either directly participated in the unconstitutional conduct or caused the conduct to occur through a failure to train or supervise the offending actor. *See id.*

### a.    Claims Against Rohwer

Winfrey names Sergeant Jake Rohwer as a defendant in the case caption. Docket 1 at 2. But Rohwer is only listed as a defendant in the case caption and is not mentioned in the body of Winfrey's complaint. *See generally id.* To provide a defendant with notice as required by the Federal Rules of Civil Procedure, a plaintiff must do more than place a defendant's name in the caption. *See Mencin v. City of Troy Police*, No. 4:24-CV-852, 2024 WL 4370846, at *3 (E.D. Mo. Oct. 2, 2024) ("Simply placing a defendant's name in the caption is not enough to assert their responsibility."); *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003) (per curiam) (holding that a plaintiff "failed to

13

state any claim whatsoever" against defendants when "he merely listed these individuals as defendants in his complaint and did not allege they were personally involved in the constitutional violations."). Therefore, Winfrey's claims against Sergeant Rohwer in his individual capacity for monetary damages are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### b.    Eighth Amendment Claims

Liberally construing Count I of his complaint, Winfrey alleges an Eighth Amendment excessive force claim against Lieutenant Schmidt based on a failure to train or supervise. Docket 1 at 4.

"[A] supervisor may be held individually liable under § 1983 if [she] directly participates in a constitutional violation or if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights." *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996) (citing *Tilson v. Forrest City Police Dep't*, 28 F.3d 802, 806 (8th Cir. 1994)). "Because § 1983 liability requires a causal link to, and direct responsibility for, the deprivation of rights, Plaintiffs must allege specific facts regarding [the supervisor's] personal involvement in, or direct responsibility for, the deprivation of their rights." *Armstrong v. City of Minneapolis*, 525 F. Supp. 3d 954, 965 (D. Minn. 2021) (citing *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007)) (internal quotation omitted).

14

The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" against a prisoner. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). The "core judicial inquiry" for an Eighth Amendment excessive force claim "is whether the accused officer[ ] applied force 'in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Peterson v. Heinen*, 89 F.4th 628, 635 (8th Cir. 2023) (quoting *Hudson*, 503 U.S. at 7). In determining whether an officer used force in a "good-faith effort to maintain or restore discipline," courts consider (1) "the need for application of force," (2) "the relationship between that need and the amount of force used," (3) "the threat 'reasonably perceived by the responsible officials,'" and (4) "any efforts made to temper the severity of a forceful response." *Id.* (quoting *Hudson*, 503 U.S. at 7).

Taking all facts asserted by Winfrey as true, as this Court must at this stage, it cannot say that Winfrey's excessive force claim wholly lacks merit. Winfrey alleges that a "knee was put on [his] neck[,] and that after the incident, he was unable to walk and had to be carried back to his cell." Docket 1 at 4. Winfrey alleges that Lieutenant Schmidt witnessed this incident and failed to correct the officers involved. *Id.* Thus, Winfrey's Eighth Amendment excessive force claim against Lieutenant Schmidt in her individual capacity for money damages survives screening under § 1915A.

Liberally construing his complaint, Winfrey also alleges an Eighth Amendment failure to intervene claim against Lieutenant Schmidt. Docket 1 at 4. "The Eighth Amendment imposes upon prison officials the obligation to

15

restore control in tumultuous situations." *McCoy v. Pree*, No. 4:22-CV-00114 JAR, 2022 WL 2802387, at *7 (E.D. Mo July 18, 2022) (citing *Buckner v. Hollins*, 983 F.2d 119, 121 (8th Cir. 1993)). Therefore, a prison official can be liable under 42 U.S.C. § 1983 for failing to intervene in another official's constitutional violation. *Williams v. Mueller*, 13 F.3d 1214, 1216 (8th Cir. 1994) ("A prison official acts with deliberate indifference to an inmate's safety when the official is present at the time of an assault and fails to intervene or otherwise act to end the assault."); *see also Buckner*, 983 F.2d at 121–22 (concluding that a correctional officer had a duty to intervene on behalf of an inmate being assault by another correctional officer); *Putman v. Gerloff*, 639 F.2d 415, 423 (8th Cir. 1981) (recognizing that a deputy could be held "jointly liable for failing to intervene if a fellow officer . . . was using excessive force and otherwise was unlawfully punishing the prisoner.").

Here, Winfrey alleges that Lieutenant Schmidt witnessed him be "taken to the ground" and that Schmidt "did not correct officers when a knee was put on [Winfrey's] neck." Docket 1 at 4. Therefore, Winfrey has established a plausible Eighth Amendment failure to intervene claim against Schmidt, and Winfrey's Eighth Amendment failure to intervene claim against Schmidt in her individual capacity for monetary damages survives § 1915A screening.

16

### c.    Due Process Claim

Liberally construing his complaint, Count II of Winfrey's complaint alleges a Fourteenth Amendment Due Process claim against Sergeant Wollman[9] based on his failure to provide Winfrey with a tablet. *Id.* at 5.

"In order to prevail on a Fourteenth Amendment due process claim, [a plaintiff] must first demonstrate that he was deprived of life, liberty or property by government action." *Phillips v. Norris*, 320 F.3d 844, 846 (8th Cir. 2003). "Protected liberty interests may arise from two sources—the Due Process Clause itself and the laws of the States." *Persechini v. Callaway*, 651 F.3d 802, 806 (8th Cir. 2011) (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). "When the Due Process Clause does not itself confer a liberty interest, . . . whether state law has created a protected interest turns on whether the challenged conditions impose 'atypical or significant hardship . . . in relation to the ordinary incidents of prison life.'" *Id.* (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

Here, Winfrey appears to be alleging that he has a protected liberty interest in tablet use. Docket 1 at 5. But "[c]ourts have uniformly held that the

---

[9] Winfrey also states that "the housing sergent [sic] refused to give [him] a tablet because of a comment [he] made toward [the housing sergeant]." Docket 1 at 5. It is not clear who this housing sergeant is, or what claims Winfrey attempted to assert against this housing sergeant. *See generally id.* Sergeant Jake Rohwer, listed as a defendant, is described as a housing sergeant. *Id.* at 2. But, as discussed above, claims against Rohwer were dismissed because Rohwer is only mentioned in the list of defendants and is not mentioned in the body of Winfrey's complaint. Although pro se complaints are to be construed liberally, "they still must allege sufficient facts to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). This Court is not required to supply additional facts for a pro se plaintiff, nor construct a legal theory that assumes facts which have not been pleaded. *Id.*

17

denial of access to an electronic tablet does not rise to the level of an atypical and significant hardship and that 'inmates do not have a protected liberty interest in tablet use.'" *Perkins v. Newcomer*, No. 7:23-CV-00074, 2024 WL 4295261, at *6 (W.D. Va. Sep. 25, 2024) (citations omitted). *See also Hearns v. Cisnero*, No. 1:22-CV-1033-JLT-CDB (PC), 2023 WL 5353665, at *6–7 (E.D. Cal. Aug. 18, 2023) (recognizing that a prisoner does not have a protected property interest or liberty interest in possessing a tablet while incarcerated) (citations omitted), *report and recommendation adopted by* 2023 WL 6446215 (E.D. Cal. Oct. 3, 2023); *Burrell v. DOCCS*, 655 F. Supp. 3d 112, 129 (N.D.N.Y. 2023) ("inmates do not have a protected liberty interest in tablet use.").

In Count II of his complaint, Winfrey also states that he has not been able to contact his family for almost twelve months. Docket 1 at 5. To the extent that Winfrey is alleging that not having access to a tablet has interfered with a liberty interest in contacting his family, this too fails to state a claim. "While prisoners maintain some First Amendment rights to communicate with the outside world, 'the extent of inmates First Amendment right to communication with the outside world is a fact-intensive universe[,]'" and "[i]nmates are not constitutionally guaranteed access to a particular type of communication." *Biron v. Hurwitz*, No. 19-CV-57 (SRN/LIB), 2019 WL 13334558, at *5 (D. Minn. Nov. 22, 2019) (citing *Holloway v. Magness*, 666 F.3d 1076, 1079 (8th Cir. 2012)). *See also Mitchell v. Annucci*, No. 9:17-CV-0892 (TJM/DJS), 2020 WL 7029136, at *6 (N.D.N.Y. Sep. 3, 2020) ("Although prison inmates retain a right under the First Amendment to send

18

and receive information while incarcerated they do not have a constitutional right to a particular form of communication, including access to the internet or email." (quotation omitted)), *report and recommendation adopted by* 2020 WL 6375468 (N.D.N.Y. Oct. 30, 2023); *Aich v. Reno Cnty. Corr. Facility*, No. 25-3235-JWL, 2026 WL 183458, at *4 (D. Kan. Jan. 23, 2026) (dismissing claim on screening because the plaintiff "failed to allege that he lacks other means of communicating with his family" than text messaging and noting that "Plaintiff does not have a constitutional right to a particular form of communication.").

Lastly, Winfrey appears to allege that pursuant to DOC policy, officers do not have discretion as to whether to provide inmates with tablets, and that this failure to follow policy has resulted in a deprivation of his constitutional rights. Docket 1 at 5 (stating that "DOC Policy Does not state that when handing out tablets, Officer Discretion[]"). To the extent that Winfrey is alleging that he has a liberty interest in having DOC policy followed, "there is no federal constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations." *Phillips v. Norris*, 320 F.3d at 847 (citing *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996)).

Therefore, Winfrey's claims against Sergeant Wollman in his individual capacity for monetary damages regarding tablet-use are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

19

### d.    Claim Regarding Unanswered Grievances

As this Court understands his complaint, Winfrey alleges that his due process rights have been violated due to his kites and grievances going unanswered. Docket 1 at 6; Docket 5 at 1–2. Liberally construing his complaint, Winfrey is asserting this claim against Warden Benting. *See* Docket 1 at 6.

The Eighth Circuit has held that no constitutional right is violated by a defendant's failure to process all of the grievances a prisoner submits for consideration. *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (per curiam) (recognizing that no constitutional right was violated when a prisoner's grievances were not picked up and his grievances were not answered). "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment." *Id.* (alteration in original) (citation omitted); *see also King v. Houston*, 556 F. App'x 561, 563 (8th Cir. 2014) (per curiam) (explaining that, under *Buckley*, "prison officials' failure to process or investigate grievances, without more, is not actionable under § 1983"). Therefore, Winfrey's claims against Warden Benting in her individual capacity for money damages regarding the grievance policy are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### e.    Conditions-of-Confinement Claim

Liberally construing his complaint, Winfrey also appears to be asserting a Fourteenth Amendment due process claim based on his placement in administrative segregation. *See* Docket 1 at 5 (stating that he has been deprived of "life, liberty, or property" and that he has suffered from "[m]ental deterioration with 24hour lockdown"); *id.* at 6 (alleging that he has been in "24 hour lockdown for aprox. 180 days, [he] feel[s his] mental deteriorating" along with a statement that he has a "Right to Due Process").

As stated previously, "to prevail on a Fourteenth Amendment due process claim, [the plaintiff] must first demonstrate that he was deprived of life, liberty, or property by government action." *Orr v. Larkins*, 610 F.3d 1032, 1034 (8th Cir. 2010) (per curiam) (alteration in original) (quoting *Phillips*, 320 F.3d at 846). "The Supreme Court held that inmates possess a state-created liberty interest in avoiding assignment to conditions of confinement that 'impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Smith v. McKinney*, 954 F.3d 1075, 1080 (8th Cir. 2020) (alteration in original) (quoting *Sandin*, 515 U.S. at 484)).

When determining whether an inmate possesses a liberty interest, the Eighth Circuit instructed courts to "compare the conditions to which the inmate was exposed in segregation with those he or she could expect to experience as an ordinary incident of prison life[,]" and noted that it does "not consider the procedures used to confine the inmate in segregation." *Orr*, 610 F.3d at 1034 (quotation omitted). In *Orr*, the Eighth Circuit affirmed the

21

districts court's dismissal under 28 U.S.C. § 1915(e) of a plaintiff's claim that his Fourteenth Amendment due process rights were violated by being held in administrative segregation for nine months, noting that it has "consistently held that a demotion to segregation, even without cause, is not itself an atypical and significant hardship." *Id.* (quotation omitted).

The Eighth Circuit has "consistently held that administrative and disciplinary segregation are not atypical and significant hardships under *Sandin*[,]" and "[a]n inmate who makes a due process challenge to his segregated confinement must make a threshold showing that the deprivation of which he complains imposed an atypical and significant hardship." *Portley-El v. Brill*, 288 F.3d 1063, 1065 (8th Cir. 2002) (citation modified) (finding that the plaintiff's due process claims "were defectively pleaded" when the plaintiff "did not allege that those conditions were atypical and significant hardships in relation to the ordinary incidents of his prison life.").

While Winfrey broadly alleges that his placement in administrative segregation has taken a "poor tole [sic] on [his] mental health[,]" and that he feels his mental health deteriorating, he does not allege how his confinement in administrative segregation imposed atypical and significant hardship. Docket 1 at 5–6. Although Winfrey alleges that he has been on "24 hour lockdown for aprox. 180 days," Docket 1 at 6, "the length of [a plaintiff's] segregation alone," even when the length of that segregation is around nine months, "is insufficient to demonstrate an atypical and significant hardship in the absence of overly harsh conditions." *Moore v. Payne*, No. 4:23-CV-00445-LPR-PSH, 2024 WL

22

4443772, at *4 (E.D. Ark. Oct. 8, 2024), *report and recommendation adopted by* 2025 WL 817206 (E.D. Ark. Mar. 14, 2025). Indeed, "[t]he Eighth Circuit has held that stays up to twenty-six months are insufficient to create a liberty interest, if the conditions are not overly harsh." *Id.* (citing *Rhaman X v. Morgan*, 300 F.3d 970, 974 (8th Cir. 2002)). Winfrey does not provide any facts demonstrating the existence of any overly harsh conditions. *See generally* Docket 1.

Liberally construing his complaint, Winfrey is alleging that because he was placed in administrative segregation, he has not had access to a tablet and has not been able to fully access the grievance procedure.[10] *Id.* at 5–6. At the screening stage, conclusory statements that a plaintiff was "denied books, recreation time, and the grievance procedure[]" while in segregated confinement are not enough to state a cognizable due process claim. *Maxfield v. Larson*, No. 1:18-CV-01006-KES, 2019 WL 1060720, at *10 (D.S.D. Mar. 6, 2019). In *Maxfield*, the court noted that the "Eighth Circuit has indicated that a loss of privileges during segregated confinement does not create an atypical and significant hardship." *Id.* (citing *Phillips*, 320 F.3d at 847).

Further, even if Winfrey had alleged a plausible conditions-of-confinement claim, it is not clear from his complaint whom he intended to bring this claim against. *See generally* Docket 1. "A complaint which lumps all

---

[10] Winfrey also alleges that he has not been able to contact his family for twelve months. Docket 1 at 5. But Winfrey states that he has been in "lockdown" for 180 days, about six months, Docket 1 at 6, so this Court does not understand Winfrey to be alleging that the fact that he has been in administrative segregation has denied him the ability to contact his family.

23

defendants together and does not sufficiently allege who did what to whom, fails to state a claim for relief because it does not provide fair notice of the grounds for the claims made against a particular defendant." *Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821, 831 (D. Minn. 2012). Therefore, Winfrey's Fourteenth Amendment due process claims regarding his administrative segregation are dismissed for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

## III.    Conclusion

Thus, it is ORDERED:

1.    That Winfrey's motion for leave to proceed in forma pauperis, Docket 2, is granted. The Clerk of Court will send a copy of this order to the appropriate financial official at the institution that previously housed Winfrey.

2.    That Winfrey's claims against Rohwer, Schmidt, Benting, and Wollman in their official capacities for money damages are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(b)(iii) and 1915A(b)(2).

3.    That Winfrey's claims against Sergeant Rohwer in his individual capacity for monetary damages are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

4.    That Winfrey's Eighth Amendment excessive force claim against Lieutenant Schmidt in her individual capacity for money damages survives screening under § 1915A.

24

5. That Winfrey's Eighth Amendment failure to intervene claim against Lieutenant Schmidt in her individual capacity for monetary damages survives § 1915A screening.

6. That Winfrey's claims against Sergeant Wollman in his individual capacity for monetary damages regarding tablet-use are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

7. That Winfrey's claims against Warden Benting in her individual capacity for money damages regarding the grievance policy are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

8. That Winfrey's Fourteenth Amendment due process claims regarding his administrative segregation are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

9. That the Clerk shall send one blank summons form and Marshal Service Form (Form USM–285) to Winfrey so that he may cause the complaint to be served upon Schmidt.

10. That Winfrey shall complete and send the Clerk of Courts the summons and USM–285 form for the defendant. Upon receipt of the completed summons and USM–285 form, the Clerk of Court will issue the summons. If the completed summons and USM–285 form are not

25

submitted as directed within **30 days of the date of this order**, the action may be dismissed for failure to prosecute.

11. That the United States Marshal Service shall serve the completed summons, together with a copy of the complaint, Docket 1, and this order, upon the defendant.

12. That the defendant will serve and file an answer or responsive pleading to the complaint on or before 21 days following the date of service or 60 days if the defendant falls under Fed. R. Civ. P. 12(a)(2) or (3).

13. That Winfrey will keep the Court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the Court's Local Rules while this case is pending

Dated June 29, 2026.

BY THE COURT:

CAMELA C. THEELER
UNITED STATES DISTRICT JUDGE